UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
MARKEETA YOUNG,

                    Plaintiff,             **MEMORANDUM AND ORDER**
                                          16-CV-04882 (FB)
     -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                    Defendant.

--------------------------------------------------x

*Appearances:*
*For the Plaintiff:*
CHRISTOPHER JAMES BOWES
Center for Disability Advocacy Rights
(CEDAR)
100 Lafayette Street, Suite 304
New York, New York 10013

*For the Defendant:*
BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

By:  CANDACE SCOTT
      APPLETON
      Assistant U.S. Attorney

**BLOCK, Senior District Judge:**

      Markeeta Young ("Young"), who formerly worked as a counselor and aide at

a home for cerebral palsy patients, seeks review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her application for

disability benefits under the Social Security Act.  Both parties move for judgment on

the pleadings.  For the reasons stated below, the Commissioner's motion is denied and Young's motion is granted insofar as the case is remanded for further proceedings.

## I.

In July 2013, Young filed an application for Disability Insurance Benefits.  She alleged disability, as of March 1, 2013, from cerebral palsy and headaches.  The Social Security Administration denied her application, and she had a hearing before an Administrative Law Judge ("ALJ").  Applying the familiar five-step evaluation process,[1] the ALJ determined that: (1) although Young had engaged in work activity from March 2013 through January 2015, there may have been a continuous 12-month period during which she did not engage in substantial gainful activity; (2) her degenerative disc disease, cerebral palsy, uneven leg length, asthma, and headaches were severe impairments; but (3) they did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[1] Social Security Administration regulations establish a five-step process for evaluating disability claims.  The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)(v)).  The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step.  *Id.*  At the fifth step, the Commissioner "need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (citing 20 C.F.R. § 404.1560(c)(2)).

The ALJ then determined that Young had the residual functional capacity ("RFC") to perform sedentary work with certain restrictions. Applying this RFC to the remaining steps, the ALJ determined that (4) Young was unable to perform her past relevant work as a home health aide, but (5) there were jobs existing in significant numbers in the national economy that Young could perform, namely addressor, order clerk, and final assembler.

The Appeals Council denied Young's request for review, rendering final the ALJ's decision to deny benefits. Young timely sought judicial review.

## II.

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). Young argues that the ALJ's RFC determination was not supported by substantial evidence. The Court agrees.

### A. RFC Determination

The ALJ determined that Young had the RFC to perform sedentary work with

the following restrictions: (1) lift or carry up to 10 pounds occasionally and less than 10 pounds frequently; (2) stand or walk with normal breaks for up to 2 hours in an 8-hour work day; (3) sit for up to 6 hours in an 8-hour work day; (4) occasionally climb ramps or stairs but never ladders, ropes, or scaffolds; (5) occasionally balance, stoop, kneel, crouch, or crawl; and (6) never work around hazards like heights, machinery, dangerous equipment, fumes, odors, dusts, smoke, gases, and poor ventilation. *See* Administrative Record ("AR") at 24. The ALJ's RFC determination was based on Young's hearing testimony, medical history, and the medical opinions of multiple physicians. *Id.* at 24-27.

The ALJ failed to properly determine Young's credibility, failed to properly weigh the medical evidence, and failed to rely on any expert medical opinion in support of her RFC determination. The RFC determination was therefore not based on substantial evidence.

### 1. Medical History

Young experienced a range of health conditions as a result of her premature birth. She was diagnosed with cerebral palsy ("CP") and spastic quadriplegia by the age of two.[2] AR at 403. She underwent multiple surgeries to treat skeletal

---

[2] "Cerebral palsy is a disorder of movement, muscle tone or posture that is caused by damage that occurs to the immature, developing brain, most often before birth. . . . In general, cerebral palsy causes impaired movement associated with abnormal reflexes, floppiness or rigidity of the limbs and trunk, abnormal posture, involuntary movements, unsteady walking, or some combination of these. . . . Cerebral palsy's effect on functional abilities varies greatly." *Cerebral Palsy*, Mayo Clinic (last visited Dec. 18, 2017),

deformities, including clubbed feet and a shortened right leg. In March 2015, MRI results revealed mild dextroscoliosis[3] of the lumbar spine and mild disc bulging. In 2011 and 2013, MRIs to diagnose Young's headaches revealed brain inflammation and other abnormalities. A CT scan from 2013 showed signs of a brain defect associated with premature birth. In March 2013, Young's health was deteriorating. She complained of back pain, dizziness, blurred vision, and trouble walking. She had several falls, including one in the shower during which she hit her head and fractured her toe. In January 2015, she fell at work and injured her head and back.

## 2. Credibility of Young's Hearing Testimony

According to Young's testimony, she lived with her sister and her sister's family, and they performed most of the household chores, including caring for Young's two-year-old daughter. Young sometimes helped her sister with the shopping and drove to physical therapy twice a week. She also went to church services and sometimes had trouble sitting for the entire 45 minutes but nonetheless tried.

From 2002, Young worked at a group home for CP patients. Her duties

---

https://www.mayoclinic.org/diseases-conditions/cerebral-palsy/symptoms-causes/syc-20353999. "Spastic quadriplegia is the most serious and disabling form of spastic cerebral palsy." *Spastic Quadriplegia*, Brainand SpinalCord.org (last visited Dec. 18, 2017), http://www.brainandspinalcord.org/spastic-quadriplegia/.

[3] Dextroscoliosis is a deformity of the spine that causes it to curve to the right. *What is Dextroscoliosis and How is it Treated?*, Healthline (last visited Dec. 19, 2017), https://www.healthline.com/health/dextroscoliosis.

included lifting patients, who could weigh 100 pounds or more. After her fall in January 2015, she stopped working there, although she remained nominally under the home's employment. As to functionality, Young could walk "maybe a block" at a time, could not stand for long, and could sit for 20-25 minutes before she needed to lie down. AR at 62. At the time of the hearing, she was experiencing frequent pain in her legs and feet, was falling often, and had fallen "down the stairs a few times." *Id.* at 65-66. She was unable to bend, kneel, or crouch.

The ALJ found that Young's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR at 26.

An ALJ must consider seven factors when a claimant's subjective complaints suggest greater severity than can be shown by objective medical evidence.[4] The ALJ did not expressly consider these seven factors. Instead, she concluded that Young's testimony was "not entirely credible," for the following reasons: Young's CP did not

---

[4] The seven factors set forth in the SSA regulations include: (i) claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating or aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (vi) any measures the claimant uses or has used to relieve pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3).

6

"require the use of a cane," and she had "only slightly slurred speech," AR at 26; one medical report described her CP as mild and stated that she was "very functional," *id.* at 26; Young had worked for "many years at substantial gainful activity levels with this impairment," *id*; moreover, Young was able to do things like drive twice a week, participate in the care of her child, shop, attend weekly church services, take the bus, tend to her personal needs, and continue to work at the group home.

The ALJ's credibility determination was not supported by substantial evidence. First, the medical report stating that Young's CP was "mild" was from January 2013, before the alleged onset of disability. *See* AR at 479. The record shows that Young's condition deteriorated significantly starting in March 2013 and continuing through the date of the hearing. For the same reason, it is also not relevant that Young worked for several years before her alleged onset of disability and health deterioration. By focusing on a medical report before the alleged onset date and ignoring the deterioration in Young's health, the ALJ failed to consider "all of the relevant medical and other evidence." *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (citing 20 C.F.R. § 404.1545(a)(3)).

Second, the ALJ cited no medical evidence to support her conclusion that not using a cane or having "only slightly slurred speech" was inconsistent with the functional limitations Young described. "In the absence of a medical opinion to support the ALJ's finding as to [the claimant's] ability to perform sedentary work, it

is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . .'" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). This is especially so considering that, as discussed below, multiple treating physicians supported Young's description of her functional limitations. *Id.* ("[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." (alterations in original)).

Finally, that Young occasionally drove and was sometimes able to sit through a 45-minute church service does not "truly show[] that [s]he is capable of working." *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989) ("When a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.").

Furthermore, that Young continued to work at the group home and engaged in activities like lifting 100-pound patients up until January 2015 did not contradict her testimony that she was substantially more restricted at the time of her hearing in June 2015. The record showed that Young's condition was worsening and that she had suffered a fall in January 2015, injuring her back and limiting her capabilities going forward. However, as discussed further below, Young's work activities from the

alleged date of onset until January 2015 suggest a later onset date of disability. The ALJ did not consider whether a later onset date was appropriate but simply concluded that Young's testimony was "not entirely credible" without regard to the date of onset. Given these errors, the ALJ's credibility determination was not supported by substantial evidence.

### 3. Evaluation of Opinions of Treating and Consultative Physicians

Young's treating physicians, Drs. Shoulton, Glasman, and Young, all opined that Young could only sit or stand for two hours or less in an 8-hour work day and that she would need to be absent from work more than three or four times per month. The Commissioner's consultative examiner, Dr. Flores, examined Young and generally corroborated the findings of Young's treating physicians.

Nonetheless, the ALJ found that Dr. Flores's opinion was entitled to little weight because it was vague. She further concluded that the opinions of Young's treating physicians were entitled to little weight for substantially the same reasons that she found Young's testimony not to be credible: because Young's MRI results showed "no more than moderate level injuries with no involvement of a nerve root or stenosis," Young did not use a cane, and more substantial limitations were inconsistent with Young's daily activities. AR at 27. Those reasons do not justify rejecting the physicians' opinions.

Although a treating physician's opinion on a claimant's RFC is not entitled to

controlling weight, *see* 20 C.F.R. § 416.927(d)(2)-(3), the ALJ's determination of the weight to give each medical opinion was not supported by substantial evidence. First, for the reasons discussed above, Young's activities and that she did not use a cane do not constitute substantial evidence of her ability to perform sedentary work such as sit for 6 hours and stand or walk for 2 hours in an 8-hour work day. Furthermore, even if Young did not use a cane, Dr. D'Angelo reported that Young required the use of "custom made orthotic shoe appliances," which could minimize her extreme pain but not correct for years of physical compensation for her CP symptoms. AR at 560.

Second, the ALJ considered whether spinal MRIs supported the physicians' opinions, but did not explicitly consider whether their opinions were supported by medical records relating to Young's CP. She thus failed to base her opinion on all the relevant evidence. *See Genier*, 606 F.3d at 50.

Third, the ALJ's conclusion that greater functional limitations were not supported by the record contradicted the opinion of the treating and consultative physicians. The ALJ could have sought an additional medical opinion to support her RFC determination, *see* 20 C.F.R. § 404.1545(a)(3), but instead relied on her own opinion that the medical evidence did not support the functional limitations described by Young and the physicians on record. The ALJ thus "made an RFC determination in the absence of supporting expert medical opinion and improperly substituted [her] own lay opinion for the opinion of a physician." *Henningsen v. Comm'r of Soc. Sec.*

*Admin.*, 111 F. Supp. 3d 250, 271 (E.D.N.Y. 2015) (alterations removed).

The fact that Young continued to work after her alleged onset date does not undermine the opinions of Drs. D'Angelo and Glasman. They assessed Young's residual functional capacity as of May and June 2015, and Young had stopped working in January 2015 after suffering her traumatic fall. Dr. Glasman's assessment was supported by his treatment records from February 2015, when a physical examination showed that Young had musculoskeletal spasms across her entire spine, "slight weakness" of the right arm and leg, atrophy of the gastrocnemius muscle of her right leg, and a mild hemiparetic gait, AR at 342, and from May 2015, when he diagnosed her with chronic low back pain, *id.* at 565. Dr. D'Angelo's assessment was supported by an extensive statement of medical justification. *Id.* at 560.

Dr. Shoulton assessed Young's functional capacity in June 2013, but nothing in his report was necessarily inconsistent with Young's description of her work duties at the group home: Young testified that her work there required her to lift patients "pretty much the whole shift." AR at 54. Dr. Shoulton did not opine on Young's ability to lift. Although he opined that she could stand and sit for one hour or less in an 8-hour work day, the record does not show whether that opinion was inconsistent with Young's work at the group home. In any event, even if Dr. Shoulton's opinion was entitled to little weight, substantial evidence did not support the ALJ's decision to give reduced weight to the opinions of Dr. D'Angelo and Dr. Glasman.

Given the ALJ's errors in assessing Young's credibility and rejecting the opinions of her treating physicians, the ALJ's RFC determination was not supported by substantial evidence.

## B. Onset of Disability Date and Disposition

Although there is persuasive evidence that Young was disabled at the time of her ALJ hearing, remand solely for calculation of an award of benefits is not appropriate because the date of disability onset is not clear. Young's continued work activity after her alleged onset date of March 1, 2013, suggests that the actual onset date was later.

"[A] claimant's onset date of disability is the first date on which she is unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 239 (E.D.N.Y. 2014) (citing 42 U.S.C. § 423(d)(1)(A)). The ALJ found that there had not been a continuous 12-month period during which Young did not work at all. However, because Young's earning records were vague, the ALJ gave her the benefit of the doubt and held that there was a 12-month period during which she did not work at "substantial gainful activity levels." AR at 22.

In light of the Court's conclusion that the ALJ's RFC determination was not supported by substantial evidence, the ALJ must now decide Young's onset of

disability date— that is, decide when that 12-month period began. The Court is unable to do so in the first instance because, as the ALJ noted, Young's earnings records are not complete.

However, the record here provides "persuasive proof of disability" existing at the time of Young's hearing before the ALJ. *See Henningsen*, 111 F. Supp. 3d at 272; *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). Further evidentiary proceedings shall therefore be limited to the issue of the date of onset of disability. After determining such date, the ALJ shall calculate an award of benefits accordingly.

## III.

For the foregoing reasons, the Commissioner's motion is denied, Young's motion is granted, and the case is remanded for further proceedings consistent with this Order.

**SO ORDERED.**

/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
December 27, 2017